The next case today is United States v. Luis Miguel Sierra-Ayala, Appeal No. 201145. Attorney Lerman, please introduce yourself for the record and proceed with your argument. Good morning, your honors. I'm Kevin Lerman. I represent Luis Miguel Sierra-Ayala. He's the appellant. With the court's permission, I'd like to reserve two minutes for any rebuttal. Please do. Thank you. May it please the court, I'd like to start where this case started with the early morning raid, which we contend resulted in an unreasonable seizure of Mr. Sierra just steps from his parents' home on a residential street. There's two points I'd like to make about this detention slash seizure. First, the totality of the circumstances surrounding the officer's raid leave no room for a reasonable person to feel free to leave. Sgt. Lopez approached Mr. Sierra and announced he was a police officer after an aggressive chain of events that practically understood was a showing of authority by a large group of officers. The 18-officer raid was set off when Sgt. Lopez and his team broke with their operation plan, a plan ostensibly aimed at looking for illegal drug dealing activity, and just seconds after their arrival, Sgt. Lopez pulled his unmarked car onto the curb, burst out of the unmarked car, he was followed by another officer who burst out of that car, and yet another. At the point that Sgt. Lopez approached Mr. Sierra, were there any other officers left in the vicinity? I thought I had read the record that all the other officers had set off in pursuit of the people who had been fleeing. Yes, Judge Celia, there were two officers who chased several people who were also on the public street, and at the time, the testimony from Mr. Sierra, which isn't challenged by the government, is that there were additional police units arriving at that same time. There were a total of five cars, and the other officers arrived shortly behind that, and they were visible to Mr. Sierra. There was no one else on the street in the immediate vicinity when Lopez approached Sierra. That's the impression I have, and if that impression is misguided, I want to be corrected. No, at that exact moment in time, that impression was correct, but what had happened was Mr. Sierra had just observed what happens to anyone who speedily declines. Counselor, suppose we were to agree with you that this was a seizure, and also agree that there was no reasonable basis for it. What do you gain by that? Because the district court seems to accept Lopez's insistence that immediately and voluntarily, without any further actions by Officer Lopez, your client took the bag from his shoulder and opened it and showed Lopez the contents. So, and again, the district court, as I read the district court's decision, it credits that characterization of what happened. So, if we have to accept that that's what happened, what do you gain from establishing that there was a seizure and that it was not based on a reasonable investigation? What do you gain if we have to accept the district court's acceptance of Lopez's account of what then happened? If this court accepts that there was a seizure, and it was an unreasonable seizure that wasn't supported by reasonable suspicion, then everything that followed should have been suppressed. The problem, though, is that the district court's order does not accept that there was a seizure, and it makes an incorrect determination that it was somehow a consensual encounter. But under the totality of the circumstances, there's no way that a reasonable person would feel like they were free to leave in Mr. Sierra's position. I think Judge Lopez's question is, in what sense is it right to think of the, if we credit the finding that there was post-seizure a voluntary showing of the contents of the bag, in what is it, what's the authority that suggests that that doesn't break the chain, that that still counts as fruit of the poisonous tree, that there's nothing you can do post-seizure that can be sufficiently voluntary and consensual to permit the use of that evidence, even if the seizure itself was impermissible? Because at that point, there's no way that this encounter could suddenly turn consensual after the aggressive showing of force. And so, the allegation that this was a consensual opening of the bag for the officer, it's not supported by the record, and that wouldn't fit within the Fourth Amendment framework. Maybe this is right, but I guess I just would hope to have some authority that would point me in that direction, because at least, I mean, if you think about it in the Miranda context, you can be in a custodial interrogation, but if you start talking, notwithstanding that you're in custody, that can break the chain. And here, it's not as if when they seize the person, even if they seize the bag, that that would have entitled them to look inside the bag. And yet, he's voluntarily, if we credit the finding, showing them what's in the bag. So, he's giving them something that they had no right, even based on the seizure, to obtain. So, what suggests that the decision to open the bag and show it to them isn't a voluntary act, notwithstanding the seizure? I think that the interactions have to be considered together. And even looking at a case like Brenlin v. California, we're looking at whether there's a passive acquiescence to the officer's authority. But that's what I'm saying. I think that's the thrust of Judge Lopez's question, which is, we have a finding here that suggests maybe there's something more than just passive acquiescence. There's an affirmative, independent, voluntary act by the defendant, which is against his interest. But it wasn't in response to any command to do that. It wasn't something that was necessarily already obtained by the fact of the seizure itself. So, why is that fair to treat as fruit of the poisonous tree, rather than something independent of that? Because the circumstances, the totality of the circumstances, do not support a conclusion that this was a voluntary act in the midst of a very scary encounter. We have to reject the finding of the District Court to accept Lopez's account. I did nothing. I said nothing. I just show up. I identify myself as a police officer. Other people in the group run away, and he, for whatever reasons, he opens the bag and shows me what's there. I didn't order him to do it. I understand your client says that Lopez did order him to do it, and he was responding to that. Lopez says I did no such thing, and as I read the District Court's decision, the District Court accepts that account of what happened. So, I think you're saying we have to reject the decision of the District Court to believe Lopez and disbelieve your client. Well, or are you saying, I mean, this just is the same question, but just another part of it, which I'd like you to make sure you address. Or are you saying that even if we accept the District Court's finding, just as a matter of law, we must treat that decision on his part post-seizure to show it as if it's fruit of the poisonous tree? To respond to, or attempting to respond to both questions, it would be the position that you just referenced, Judge Barron, that it would once, because the simplest... Okay, so if, second, that's just a legal argument about how the fruit of the poisonous tree doctrine works. What's your best case? Do you have a case in which a situation in which there's been an illegal seizure, and then a conceitedly voluntary decision to show the contents of material that the seizure itself did not entitle the government to acquire, is nonetheless treated as fruit of the poisonous tree? I mean, maybe there is, but it would be helpful to know where I'm supposed to look, because that seems to be the legal point you're making. Your Honor, I would have to follow up with a supplemental letter. I don't have a citation offhand. Counsel, can I ask you a slightly different question, come at this again? I'm struggling with the notion of whether we really do have a finding by the district court as to this voluntary act. I read the magistrate judge's report and recommendation that contains such a finding. There's then an objection to that R&R. The district court has an obligation for de novo review, but the district court on motion of the government then limits the de novo review hearing to the standing issue. Did the district court make a determination as to anything other, the district court itself as opposed to the magistrate judge, make a determination as to anything other than standing? The district court did make other determinations, but they are, for example, in the moment of where the bag is, whether the bag's open or closed, and that moment of allegedly showing it to the officer, I think the district court determination is a bit murky. I'm sorry. Yeah, I've been unable to find a de novo review of the magistrate judge's finding, which admittedly shows voluntariness. And there was a dispute about the scope of the de novo hearing, but I don't have a more exact answer at this moment. In your briefing to us, if I understand it, you've treated the district court as having made that finding. I believe so, and our focus was more in terms of whether the initial encounter was consensual or not, and I do believe that that was the court's finding. No, but on the specific point Judge Selya just asked you about, in your briefing to us, I understood you to premise your arguments on the understanding that the district court had made the finding that your client voluntarily showed the contents of the bag to the officer, notwithstanding the officer not having asked him to do so. We do that in... Yes, I believe that's a correct assessment. If the court... I am out of time. I had one other point about the second issue, but I saw that I'm out of time. Yeah, I think... Did you reserve two minutes or not? Yes. Yeah, you can just do it on your two minutes. Are you talking about the cross-examination issue, counsel? Yes, your honor. I would like you to address that in rebuttal. Good, all right. Thank you. Thank you. Thank you, Attorney Lerman. Please mute your audio and video at this time, and Attorney Bezosa, please unmute and introduce yourself on the record to begin. Good morning, your honor. AUSA Francisco Bezosa for the government. Mr. Bezosa, can I ask you to start where I left off with Mr. Lerman? Can you identify for me in the record where the district court, as opposed to the magistrate judge, conducted its de novo review of the finding of voluntariness and affirmed the magistrate judge's finding? Your honor, the de novo review hearing was limited in scope to the standing issue, so... That's what I thought, and I've read the decision on that, and it doesn't mention this issue of voluntariness. So we're left with the magistrate judge's finding, an objection to it, which under the law entitles the defendant to de novo review, and no finding on de novo review, leaving aside the possibility that the defendant may effectively have conceded the issue by the way it briefed it. If we can't regard that as a concession, what do we do with the magistrate judge's unreviewed finding? Well, your honor, in this case, after the government moved to limit the scope of the de novo review and it was granted, we can deduce from that that the district court, in all other matters unrelated to the standing issue, adopted the magistrate judge's finding. How can we deduce that? Does the district court say anything that would ground an inference to that effect? I'd have to look over the record again to see if that's... Yeah, because I haven't been able to find... I mean, we take 28 J letters on this from either side, but I haven't been able to find anything. Yes, your honor, we'll work on that. As I was about to say, the record ably supports the district court's decision to deny the motion to suppress. First, this began as a casual encounter, as the district court found. Let's be clear, this was not a scene out of a police crime drama theory. There wasn't a barrage of police cars that stormed through militancy and surrounded these individuals with a dozen or so armed police officers jumping out of vehicles and ordering and commanding them to stop or to... Well, there were five police cars and there were more than a dozen officers. Your honor, the operational plan, which went as executed, was for car number one, an unmarked car, which was driven by officer Lopez and which he was accompanied by two other officers, all of them in civilian attire, was the first to enter Melilla Street. Behind them were two other vehicles that maintained a distance and would only intervene once called. The rest of the vehicles were strategically parked in the wooded area known for where the drug transactions were taking place. So in that initial encounter, there was only one vehicle and only these three officers involved. And Sierra's own testimony is consistent with that. I would point the court to page 199 of the appendix, which was in... What's the situation? By the time the contents of the bag are supposedly shown by the defendant to the officer. Yes. How much police presence had there been at that time and how much of an announcement of it being police present had been made? Three officers, your honor. The officer Lopez and the two officers that were accompanied in the unidentified car. The other officers were... And they had all exited their cars and announced themselves as police by that point? The record isn't clear as to what happened with the officers besides the ones that were in front of the house. Counsel, in terms of the officers in front of the house, I mean, the other individuals with the appellant, they run off and the officers immediately chase them. I mean, wouldn't that suggest the appellant that he wasn't free to leave given the reaction of the officers? I mean, to me, there is a kind of really sort of a fanciful argument here that this was not a seizure. I mean, there is the show of force that's been described. The officer immediately identifies himself as a police officer. The other two run off and the police chase them. I mean, what other conclusion can you draw that the appellant wasn't free to leave? I mean, I don't know how you can argue to the contrary, respectfully. That just seems so fanciful. Well, Your Honor, in this case, what happened was that the officers identified themselves as police and then the others fled, which led to the other officers pursuing them. But when it came to Siena specifically, he never testified that he was that officer or Sergeant Lopez rushed towards him or acted menacingly toward him, simply approached him and announced again that he was free. But why would he? I mean, he didn't try and leave. Because he had seen what happened when you do leave. Well, the officer wouldn't know if he was in a delayed reaction or would then run off if he didn't run off. Assume just for a second that it is a seizure. Yes. Can you just address the issue that we were talking to your opponent, opposing counsel, about, which is, what is the significance? If we accept the magistrate judge's finding and maybe treat the district court as having endorsed it, that the defendant post what I'm going to call the seizure voluntarily opened the bag without having been asked to do so and showed the contents of it. What does the case law suggest we're supposed to do in how we treat that activity? Is that fruit of the poisonous tree, as the opposing counsel suggests? Or if it's not, why not? And what authority is there to help me think that through? Your Honor, it would not be a fruit of the poisonous tree. And there are two points on that. First, this was an independent act from the defendant. It wasn't coerced or wasn't asked for by Sergeant Lopez. It was an independent, voluntary act by this defendant. Moreover, there is the issue of the fact that he didn't have standing to challenge.  What is your best case for the conclusion that we have to treat this as an independent act that breaks the... Like brother counsel, I would have to supplement Rule 28J to see if we can find a case on that specific point. I don't have it offhand on me right now. But for reasonable suspicion, I would point out that this is... This requires a particularized and objective basis for suspecting that a person stopped for criminal activity. That objective component focuses not on what the officer believed, but what a reasonable officer in his position would have thought. And what did we have here? We had a 15-year police veteran who had been patrolling this area for three years or so, having done about 25 or so patrols, 15-plus arrests, drug-related arrests in this area, known for years as a high-crime rate area. And from that... Now, so excuse me. What is particularized about what the Apollo did here? I mean, he's just standing in his neighborhood. I understand the high-crime area suggestion. And we've acknowledged that can be relevant to the reasonable investigation determination. But there's got to be more. And he's just standing there with apparently an Adidas-type bag on his shoulder. He doesn't do anything. So what is particularized? And he just stands there. He doesn't run away, which can be sort of a consciousness of guilt. He just stands there. He doesn't do anything. What's particularized about what he did that would justify an officer thinking that he's involved in criminal activity of some kind? Your Honor, from his experience, he, Sergeant Lopez, gained knowledge about how this drug point operated and how sellers went about doing their business. He knew, for example, that they usually went and were congregated in large groups and was never just one of them. There was always a large group of them together to protect themselves. Safety in numbers, of course. He knew that these messenger-type fanny packs were the kind that would be used to store drugs or firearms. And I would point out that these... This is described as an Adidas bag. It's a gym bag, which a lot of people carry around on their shoulders. I mean, that's what... I mean, I understand that the officer opines, based on his experience, that these kind of bags are often used to carry drugs or weapons, but they're often used for completely innocent purposes as well. Right? Sure. And the government agrees that, you know, being in a high-crime area standing alone is not sufficient. Carrying this bag alone is not sufficient. Being congregated with a group of people is not sufficient. But it's a totality of the circumstances in which he was found. Sierra was not only in a high-crime area, he was... The totality is being with a group of friends carrying a gym bag in a high-crime area. The totality, sorry, your honor? Is being with a group of people, of peers, carrying a gym bag in a high-crime area. That's the totality? A group of people, who most of them were also carrying these fanny packs, gym bags, right in front of the house that was directly adjacent to the wooded area known for where the drug transactions took place. The consequence of that is that you just can't gather with your friends with gym bags if you live there, without being subject to being stopped and searched. That's the conclusion that the government wants to advance? No, your honor. I would not characterize it as that. What we're saying is that with all these things put together, there was a reason... The things that you're putting together are the fact that it's a group of peers of a certain age in a place where they supposedly live with gym bags. Is there anything more than that? As I said, your honor, it wasn't just that they were in a high-crime area or just in militant streets generally. They were directly in front of the house that was directly adjacent to this wooded area, which was, from his experience, what the officer knew was where these drug sellers usually congregated to conduct their business. And as this court mentioned in its recent decision in the United States v. Tom, which appellant writes in response to the government's Rule 28J letter, it's well established that reasonable suspicion does not preclude existence of confounding facts. It's not absolute certainty, your honor. And indeed, as the Supreme Court reminded us in Illinois v. Ward law, even in Terry, the conduct justifying the stop was ambiguous and susceptible to innocent explanation. Can you just address the standing issue briefly? Yes, your honor. Your honor, the government maintains that there was failure to show standing both because there was no reasonable expectation of privacy, nor was there a Bailor-Bailey relationship. Although found in possession of the bag, he himself admits that it was only for five minutes and for a very specific purpose. Hold this bag for me while I rummage around my pocket for change for you. He did not have complete control of that bag because his cousin was right near him, maintained right near him close to the bag and never relinquished control of the bag. It wasn't near him any longer, he ran off. I mean, right, his cousin ran off. And so he's left, he's standing alone with this bag on his shoulder that, yeah, his cousin gave to him, I guess temporarily, but now the cousin's gone. And so why doesn't, in the most basic way, why doesn't he have a kind of possessory interest in the bag? Obviously, he doesn't own it. He denies he's aware of the contents, but the cousin's gone and he's left literally holding the bag. Why doesn't he have a possessive interest? I mean, all this detailed analysis of bailments and deposits and all of that. I mean, again, just taking kind of a common sense view of what's going on here. His cousin had asked him to hold the bag. He's got it. The cousin's run off. Why doesn't he have a possessory interest in the bag? Precisely because it was given to him not as transferring any possessory interest to him just for a momentary... It's not momentary any longer. The cousin's gone. So... And that almost would say that the cousin, well, he abandoned the bag, but that doesn't mean that... Are you saying that he doesn't have standing in the contents of the bag or are you saying he doesn't have standing with respect to the bag? To the bag. Well, to both, yeah. To the bag and to the contents. And here we... Sierra himself testified he had no close relationship with his cousin. There was no history or pattern of the cousin asking him to hold or safeguard his belongings in any way. And also, he didn't take any precautions in ensuring the privacy of that bag. So all of this put together, there's just nothing from the record to suggest that he had a reasonable expectation of privacy or any possessory interest under a Baylor-Bailey theory of the relationship. I would have thought your answer would be that even if he had a possessory interest, that's not the question. The question is whether he had a reasonable expectation of privacy and that Judge Delgado got it right when he found that he didn't. Correct, Your Honor, yes. That's the basis of the argument, yes. Thank you. If the panel doesn't have any further questions, the government will be back on the brief. Judge, can I just clarify something? Yes. I'm looking at a decision by Judge Delgado-Hernandez. Maybe I'm looking at the wrong one. I mean, he does spend a lot of time talking about the standing issue, but he seems to go on to discuss other aspects of the case. And at some point, he seems to drop a footnote where he suggests he's agreeing. He doesn't elaborate. This is a very important point. That's why I'm holding it up. He seems to say he agrees with the factual findings of the district court. Am I looking at the right decision? I don't want to hold things up. I think you each counseled that they were going to file a 28-J letter with respect to this finding issue, and so if you just address that point, I think that would be helpful to the court. That would be helpful. Thank you very much. Absolutely, Your Honor. Thank you, Attorney Bezosa. If you could please mute your audio and video at this time. And would Attorney Lerman please unmute, reintroduce himself on the record to begin. Good morning again. Kevin Lerman on behalf of Mr. Sierra. I'd like to return briefly to the point of the order. I would point to page 39 of the addendum to our opening brief. And I do believe that the court's decision is entirely premised on there not being a seizure and there somehow being a consensual encounter. So we will submit a 28-J, but I believe that that's the crux of the issue for the court. When you file a 28-J, that's not the point that we want you to address. The point we want you to address is not whether the seizure was consensual. It's whether there was a finding by the district court about whether the showing of the contents of the bag was voluntary. Voluntary, yeah. I understand. I'd like to... I just want to make sure you address the point that Judge LePage has asked you to address in rebuttal, which is the point about the testimony or the... about the officer. Cross-examination. Cross-examination of the officer. And then I... to answer that, but then if you have something in short in rebuttal that is not about that, I want to... you have time to do that as well. Counsel, just so you know what's of concern, let me... your contention is largely that Lopez lied at the suppression hearing. And that's really what you want to explore at trial. This is the question that I understand was asked at the suppression hearing and the district court reads this and says, I don't think he lied. The question is, Sergeant, there was an administrative complaint against you as a result of a theft or loss of money during a warrant execution. Is that correct? And he says, that's not right. The judge looks at that question and says, the suggestion is that you, Sergeant, were involved in a theft or loss of money during a warrant. And that's clearly not right. I mean, there's never a suggestion that he was involved in a theft. The problem was that he did not, he's a supervisor, he did not report it in a timely way. So the judge looks at that question and says, I don't think he was lying. Basically saying that's a poorly phrased question. And I don't think he was lying. Why? Why wasn't the judge exactly right when he took that view of the question? Yes, Your Honor. I have to answer that in two parts. Regarding why that, that wasn't a lie, or why that was a lie. In context, you have this misconduct occurring in 2015, in April of 2015. You have the arrest here almost two years later in 2017. And he knew that he was, he was under investigation for what can only be understood as a lie by omission. He had a duty to report the misconduct of his underling. He had taken money from someone who was involved who was the subject of a search and seizure and gave it to his, someone he supervised, and that money went missing. And he had a, an affirmative duty to report that. He didn't follow it. He was disciplined. He was suspended. The suppression hearing was almost three years later at that point. And then the trial was more than four years later. He was on notice. He understood what those very specific questions were. And they were asked over and over. This complaint is the result of a theft or loss during a warrant. That's not right. Does this refresh your memory? He was shown the administrative complaints with his name on them. And he said, I was the supervisor. I did the writ. And then he said it's against Officer Daniel Lopez. It's not against you? No. And that would have come into play. The second part of my answer that I'd like to add is he should have been questioned about that misconduct. Now, whether that would have led to inconsistent statements in that lie, in addition to that, that was a separate part. But the jury was deprived of that important evidence. And we think that the Pedroza case puts it best. A trial court's discretion can't be expanded to justify a curtailment which keeps the jury from relevant and important facts on the trustworthiness of crucial testimony. And Sgt. Lopez was the one and only person who claimed to have observed the possession of Mr. Sierra and was the one and only person who testified at the suppression hearing. So he should have been confronted. But if counsel asks an improperly phrased question, right, and the court doesn't allow that improperly phrased question and the answer to it to be used in impeachment, what difference does it make that had he been asked a properly phrased question it might have gotten into impeachable evidence? It's counsel's responsibility to pose the correct questions to the witness. Isn't that correct? When you want to use prior inconsistent or prior false statements as a ground for impeachment, there is no prior false statement and you can say, well, he didn't volunteer and he really should have known what we were talking about. The fact comes back to the notion that the question just wasn't asked right. We do believe that the questioning demonstrated the answer that he wasn't being forthright and throughout his testimony he says yes and no, he's not exactly the most forthright witness but even if the court doesn't accept that that should have come in. The witness has to be forthcoming as long as his answers are truthful. If yes and no are truthful answers and the lawyer doesn't attempt to expand on it, doesn't attempt to probe behind the yes and no, the statement then can't be used for impeachment at a later time at least under any rule of law that I'm familiar with. Well even if that's the case the other part of the issue is very important because he should have been questioned he should have been cross-examined on this misconduct on this lie by omission and on this adjudicated finding that he had failed to report misconduct during a search and seizure when this case is about a search and seizure and that rendered the trial fundamentally unfair. Well that may be the basis for an active assistance or counsel claim but it's not the basis for a claim on this appeal that he should have been questioned but he wasn't by his own lawyer. The court the court precluded questioning I'm sorry just to clarify I'm speaking about questioning the court's order precluded questioning on Sergeant Lopez's misconduct complaint which had already been which was allowed by the magistrate and on the eve of trial without filing a motion to eliminate the government asked for that preclusion I thought that the proffer was that they wanted to show the prior testimony to show that he had lied about it. That was only one part of the proffer the other one was a an intention to cross examine him on that misconduct adjudication for untruthfulness and it went to untruthfulness because it was a lie by omission and it also went to bias because here's somebody who has already been disciplined and he he had a bias in favor of seeing this conviction occur just one last thought how does the argument you're making now get influenced if the contents of the bag are admissible in terms of prejudice if the contents of the bag are admissible in the trial as the trial played out it's still there's still serious problems because you had an officer who has missed consistencies throughout the trial and he has just as my opponent exalted his 15 years of experience he was shown as really an  believable officer of the law and we have no reason to expect that the result of the trial wouldn't have been different if that had been true and if that had not been true then it would have been different if that had not been true and          have been different if that had not been true and if that had not been true then it would have